The next matter on our calendar is Christopher Reese versus United States of America. It's not as noisy as you think it is. Okay. Thank you. Good afternoon. Good afternoon. Yes. Indeed. May it please the court. Robert Culp. I'm assigned counsel for Petitioner Appellant Christopher Reese. I was not involved in any of the district court proceedings. This is a case where Mr. Reese was offered a plea bargain, 57 to 71 months. Had he accepted that offer and was given a sentence at the low end of the range, he, I believe, would have gotten out about a month or two ago. As it stands, he's serving a 108-month sentence. He's got a long ways to go. He went to trial. Ordinarily, you might say, well, you rolled the dice, you lost. That's not what happened here. He was failed by two people in particular, his lawyer and the district judge. His lawyer, in the most immediate sense, by not properly and promptly advising him as to the nature of the offer that was discussed and the sentence that he faced had he gone to trial. With respect to that in particular, he put in an affidavit uncontradicted below. There was no government response below on his 2255 stating that he was told by his lawyer at actually two very brief proceedings, both before court appearances, that the offer was 46 to 57 months, but that his trial exposure was 57 to 71. Now, both of those figures are wrong. The offer was 57 to 71. The trial exposure was much higher because there's an additional two years on a count that would have been dismissed, this mandatory identity theft count. As we know from the actual sentence in the case, he got 108 months. The district court failed him in the sense that when he filed his petition, the court at first sort of waved at it and said, oh, you've made these arguments before. They were rejected by the Court of Appeals on the main appeal after the trial, which was not true. When he filed a pro se motion to reconsider and said, hey, I've made this argument about being poorly advised about the plea offer, then the judge went back and said, oh, well, that's self-serving and that's gone. That was very much mistaken process without even hearing from the government. Judge Poole, I promise not to do this too much, but you did write the FAM decision. I think the district court completely disregarded FAM and the other cases that both follow and precede FAM. And just to, I'll take one or two of your quotes if you don't mind. We have held that where the disparity in potential sentences is great, a finder of fact may infer that defendants who profess their innocence still will consider a plea. Fortunately, I re-read FAM preparing for today. I tried to read it a couple of times too when I saw you were on the panel. And this is a case, if you look at that quote, this is a case where there is a disparity, absolutely. And FAM and other cases point out that that enough can constitute the sort of objective indicia that overcome this sort of sweeping statement, you're self-serving by saying that you would have taken the plea. But you're talking in FAM there about someone who's professing their innocence. And if I can use that as a point to throw in another really interesting fact about this case, is that Mr. Reese was hardly professing his innocence in this case. He took the stand at his trial and basically said I did it. He was professing guilt in a way. Now I know that he was challenging, the case as you know involves stealing checks from the building where he worked. And he basically- Somebody else cooked up the idea, it wasn't him. He mitigated a little bit, but he basically said that yeah, I stole those checks. We stole those checks. We tried to change the name of the payee on the checks and negotiate them. But he basically said I did that. Now he challenged some things at trial, absolutely. He said, for example, that he wasn't trying to harm a bank. And that a bank was not harmed in this, that it was the people who wrote the checks who were harmed. And that defense did not work, and I think the Supreme Court eventually kind of killed it. But this was a man who was not professing innocence. He was professing a degree of guilt. He was saying I did this. So he really needed sound advice about whether to take a plea offer. And he has said- He had rejected earlier pleas, that had been offered by the government, right? Twice, twice. There was- And he went before the district court and said he understood what had been offered. He discussed it extensively with counsel. And whether that was true or not, he now kind of tries to raise some doubt about. But he said there were conditions he couldn't accept. I found it difficult to find in the record much of an indication that he really was open to taking a plea of the nature of this last one at all, but to a plea period. What's in the record is, first of all, his sworn statement on the 2255, the subsequent 2255, where he explained that if he had understood correctly the ranges that were at issue, that he would have taken the offer. And as far as that proceeding goes, both times when he was presented with the offers, it's basically the same offer twice. There were some minor clarifications made. But both times, it was presented to him in those holding pens. And I've never seen the one that would be at issue here. But just before he's about to come out in front of the district court, his lawyer says, there's an offer on the table, and he says, the guy said 46 to 57, and later on, it's clarified that it was 57 to 71. But Mr. Reese insists that not only was there that mistake, that it was not discussed with him the post-trial range he was facing, that disparity that is so important in the Pham case and in other cases. And yes, Your Honor, at the second proceeding, his lawyer did say, I discussed it extensively with him in this proceeding that took place just before they walk into court. He said, I discussed it extensively, and Mr. Reese did acknowledge, I discussed it with him. He doesn't adopt the word extensively. You can quibble over these things. And I- There were conditions that I found unacceptable. Yes, yes. He said something, I think that's a quote. I think that's a quote. You can, there are inferences that can be drawn from these things, from these statements. Mr. Reese insists that he was not shown physically the plea agreement, even though the lawyer went over it with him. I think there's maybe glass in these rooms too, but I don't think that's in the record. But one thing you don't have is you don't have all of these facts being presented to a fact finder, the district judge, in a coherent way where we can make sense of what the sides are saying. The district judge decided this case without even hearing from the government, not a thing. Also, the district judge could have heard from counsel below. He could have asked him for an affidavit. Yes, absolutely, and the government could have asked them, or either side. And so, while you're right, Judge Carney, that there was this discussion, and the district court was at least aware at the time. Now, this is a long time before he got to 2255, but he was aware at the time that there was a discussion. And the lawyer said it was extensive. Mr. Reese, when he filed 2255, said it was deficient. Even if it was extensive, he's still saying it was deficient. You got the numbers wrong, and you didn't warn me about what I was facing if I went to trial. That's not in that colloquy, what he was facing if he had gone to trial. So, excuse me, I need a little. So, but what you don't have in this case is what the court and FAM in other cases said should happen when this comes up, the Supreme Court has said this is a valid claim. You can go to trial and lose, and you can complain later on about not being given good advice about a plea offer. And there's a lot of case law to support that. But FAM and the other cases are saying there's got to be a coherent fact finding process here. Now, that certainly did not happen here. I don't know how we can argue that it did. So, at the very least, this case needs to be remanded. I would like to suggest that it's a little bit unfair to Mr. Reese to simply remand and say, okay, let's sort all this out about where you were and did you physically hold the agreement and hear from the lawyer and so forth. I mean, he's already served the time he would have served if he had accepted that plea offer. And I think he was treated unfairly, honestly, by the district court when in its two very dismissive dismissals of his claims. One, it didn't even address his claim and then- Suggesting that we should let him go? You're not suggesting that, are you? No. You're claiming that there should have been a hearing. That's what you're asking for, is that right? It's, I think you have to remand it for a hearing. Okay, I got it. Yeah. Time is up in any event. You've reserved two minutes for rebuttal. We'll hear from the government. Good afternoon, your honors. May it please the court. My name is Micah Smith. I'm an assistant U.S. attorney in the Southern District of New York and I represented the government throughout all of the proceedings in the district court below. I'd like to begin with the proceeding that Judge Carney alluded to earlier, which was the March 8th, 2013 pretrial conference. Because Mr. Culp suggested that the court below did not engage in appropriate fact finding because it hadn't heard from Mr. Reese's then trial counsel. But in fact, what the transcript of the March 8th, 2013 proceeding shows is that the district court did hear from Mr. Reese's counsel. It heard from Mr. Reese's counsel. It heard from the government. And it heard from Mr. Reese himself. And I'd just like to walk through what each of the parties said at that March 8th conference. Just to put this on the table because I think this goes to the heart of the issue. And why we believe it was appropriate for Judge Marrero, who had presided over the entirety of these proceedings, to determine that based on everything he was aware of from having presided over these proceedings, including this conference, that the affirmation that Mr. Reese was aware of the plea, had discussed it with Mr. Garnett, understood the terms, had reviewed them carefully, and after doing that and understanding the consequences of turning down the plea offer, was inclined to reject it and go to trial. Mr. Garnett then spoke next. Excuse me, this was the 46 to 57 months? This was an offer that had plea terms of 57 to 71 months. Now, Mr. Reese, in his affirmation, says that his attorney told him it was 46 to 57. I'll get to that point in just a moment. Mr. Garnett gets up after the government, explained its understanding that Mr. Reese had reviewed the terms, had discussed it with his counsel, which is correct. Mr. Garnett then got up and did not dispute any of what the government said. Mr. Garnett agreed and said, I and my client have discussed this offer extensively. Mr. Garnett added that Mr. Reese has reviewed it and raised certain issues with it. And at this juncture in the case has informed counsel that he does not wish to accept that offer and will proceed to trial. Judge Marrero then asked Mr. Reese himself to confirm that he understood the nature of the plea, had had an opportunity to consider it, and Mr. Reese said that he did. He said, yes, your honor, thank you. I've reviewed the plea agreement, and that's a quotation from Mr. Reese. Take issue and exception with a number of conditions and terms of the plea. And for that reason, I've declined the offer. There is no indication in Mr. Reese's contemporaneous statement to the district court before trial that the reason he was turning down the plea offer was because he was relying on a representation from his counsel about the nature of the plea. There was no indication from Mr. Reese. Was relying on a lack of representation from his counsel as to the alternative. What sentence exposure did he face if he went to trial and was convicted? That is what Mr. Reese says in his affirmation. But there's no indication in the transcript of March 8th, 2013 that he was turning down the offer because of some difference between what he had been allegedly advised he would receive after trial and what he claims to have believed. It wasn't advised what he would receive after trial. That's his claim now. That is his claim, your honor. And I think, so I think the question is. And the judge didn't ask him anything like, do you know your exposure if you're convicted? The judge didn't ask that. It's not part of a usual colloquy. But the judge didn't ask it, and he claims his lawyer didn't tell him that. That is what he claims in his affirmation, your honor. And nothing that you read discredits his claim. There's nothing in that colloquy that would disagree with what he now claims. So I'd like to take it to the next step of this analysis, which is Mr. Reese's affirmation itself. In paragraph six of Mr. Reese's affirmation. Reading and make your reference to the record, it makes it easier to follow you. Yes, your honor, this is page 109, I believe. Okay. Page 109 of the appendix. Paragraph six. I got it. Mr. Reese does not say in this affirmation that, well, let me affirmatively say what Mr. Reese does say. Mr. Reese says that after personally examining the written plea offers for the first time, which is his affirmation claim, I'll say more about that in a moment. He says from reading the document, he learned that the offer's sentencing range was 57 to 71 months. And he also learned from reading the document that the sentencing range was non-binding, because that's a standard provision in plea offers in the Southern District of New York. And that the government had agreed to dismiss the aggravated identity theft count, which was explicitly stated in the plea agreement on the second page. He then says, had counsel timely given me a copy of either plea offer, I would have known the correct terms and conditions of the offer, and I would have accepted the offer. Mr. Reese does not say in his affirmation that the reason he turned down this offer was because of misinformation from his attorney. What he is saying is that had his- Information, not misinformation, absence of information. And what Mr. Reese is saying in his affirmation is that the document itself had all of the information he needed to make that decision for himself. Did he have enough time to review it? Well, in the affirmation, he says that he never got the document at all. That's his claim, as Mr. Culp explained. He claims that his counsel went into the pens in advance of the conference and had a very quick conversation with him. He does say in paragraph seven, though, that what contributed to his decision to reject the plea offer was his remarkably gross underestimation of my post-trial sentencing exposure. That that also contributed to his decision. So isn't that what Judge Pooler is suggesting? Yes, Your Honor, and the reason that happened was because according to Mr. Reese, he did not have a chance to review the document on his own. Because what he's saying in the affirmation, and which is consistent with the document on its face, is that the document contained the information he needed, but he claims he didn't review it. And going back to the March 3rd, 2008 conference, it was completely clear to Judge Marrero and to the government that Mr. Reese confirmed, when questioned as his counsel, that he did review that document. But he, wait a second, he says in his affidavit that there was stuff that his lawyer didn't tell him about. So by confirming that he'd gone over with his lawyer what he'd been talked about, doesn't confirm that he knew then, at the time that he was in front of Judge Marrero on March 13th, that he somehow could divine that there were things his lawyer hadn't told him. I just don't understand, I just don't understand why not just get an affidavit from the lawyer? I mean, buyer's remorse happens in state court and federal court all the time. And I don't understand why you can't get an affidavit from Mr. Garnett who says, this is not true. I told him all this stuff. We have about a 15 minute hearing. The judge makes a simple credibility evaluation to which, absent clear air, we have to give total determination to, and it's over with. I mean, there's a dispute here about what you read into what was said. I get it. And I understand that the district court is busy. And I understand that, in your view, this is manipulation. I get it. I understand that. And there are opportunities for abuse, okay? I get that too. But it seems to me, I'm picking on you. I don't understand why you just don't give an affidavit, and then it's over. There's not even an affidavit. Judge Marrero just kind of ballparked this. I mean, seriously. I'll say a couple of things about that. So, first . . . Nobody's casting any aspersions at you or your office whatsoever. I get that too. But, I mean, he just says, well, you know, he said he understood it, and the lawyer said that he told me extensively about it. You know, lawyers package things. The lawyer's not going to stand up there and say, I did a crappy job telling about a judge, I just kind of run over, rough shot over the red. The lawyer's not going to do that. He's going to say, oh, yes, Your Honor, I explained this extensively to him, and I had a full discussion with him, and any of the questions that he had on this, I guarantee you, I answered all of his questions. The defendant said, yes, Your Honor. Boom. Let me . . . I do want to make a couple of points about Judge Marrero's . . . Okay, all right, all right, I'll stop. But I do want to . . . I'll stop. No, I'll stop. No, no. I do want to just make a couple of, or really just one point about . . . Okay. . . . your Honor's point here. It simply is not the case that Mr. Garnett said to the court, I've discussed this offer with Mr. Reese, and then Mr. Reese said yes. Mr. Reese made it very clear in his own words that he had reviewed the document, and I think the record makes it very clear that he had reviewed the document himself. What you say is contrary to what he then put in his affirmation. It's not only . . . Yes, Your Honor. Okay. It is both contrary to what Mr. Reese put in his affirmation, which has to be credited for Mr. Reese to establish a prima facie case. Okay. So what he said contemporaneously, when it was not in his interest to do so, on March 8th, was that he had reviewed the document. Now, what he . . . But still, what is there to establish that he knew what his exposure was? Well, there are a couple of things that can help to establish . . . Is this really part of what the lawyer . . . Yes. . . . is responsible for doing? Yes, Your Honor. So, a couple of things. I did point out paragraph 6 of Mr. Reese's affidavit. Mr. Reese indicates that it was his review of the document, which he says, had he been able to review, he would have accepted, he claims, the government's plea. And so our point is, the March 8th conference does actually establish that he reviewed the document. The document would have given him, as he himself indicates in his affirmation, the information he would have needed, because as reflected on appendix page 129, which is a copy of a plea offer that has the language here, there were, on the first page, four successive paragraphs. The second, third, and fourth of them all indicate that the maximum term of imprisonment for count one was 30 years. The maximum term of imprisonment for count two was 30 years. The maximum term of imprisonment for count three was 20 years. And at appendix page 130, there isn't the second page of the plea agreement. But as a standard in our district, and as would be included in the complete copy, there's an indication of the entire term of imprisonment that Mr. Reese faced, which was the 80 years. And that is entirely consistent with his affirmation representation, that when he reviewed the document, he understood its terms, its terms included the potential exposure that he faced, even under a plea agreement, so certainly after trial. With respect to Judge Murrow's fact-finding process, Your Honor, the question is twofold, because on the one hand, as Your Honor's opinion and fan makes clear, an affirmation, which is self-serving in this posture, on its own is not sufficient to establish a prima facie case, and that what is required is some objective corroboration. Now the reason for that is because ordinarily the potential penalties for filing a false affirmation are not themselves sufficient to assure that defendants who have a very serious interest in obtaining lower sentences after they have gone to trial and are dissatisfied with the results. Those penalties are not enough. And so what this court- Bam also requires a significant sentencing disparity, which is what we have here. His offer was 57 to 71 months, and he was sentenced to 108 months. And no one looked him in the eye, his lawyer didn't, and said, look, if you're convicted, it may not be 30 years. They always say that, but it could be more than two years, more than three years, more than four years, more than five years. It says, yes, Your Honor, that is his affirmation claim. I'm fairly confident that if the case is remanded, we'll put in information to disprove that. And I'll say a couple of things about the plea agreements, just so Your Honor is aware of how these proceedings went. Typically, in these plea agreements, our office, and this might be the only exception, and it's certainly the only exception I'm aware of. Our plea agreements typically have a paragraph that says, any open counts are dismissed. At the first conference at which Mr. Reese appeared, Mr. Reese said that to the extent that his offer was going to dismiss count four, he wasn't satisfied with the government's first offer because it didn't say that explicitly. It just said, any open counts. So I actually went back and I got approval to put in language in that dismissal paragraph that said- Mr. Reese said this? This is, Mr. Reese said this. Is this in the appendix? This is not in the appendix. This is what we would establish below. But there are some inferences that can be drawn from the fact that in the second agreement, there is language that says, any open count will be dismissed, including count four, which charges Reese with aggravated identity theft. That was in there because Mr. Reese said, you're playing games, you're claiming that count four is being dismissed, it's not. Did you talk to Mr. I spoke with counsel who said that this was Mr. Reese's concern as Mr. Reese was sitting in court. And I do think that their record is going to show, if the case is remanded, that Mr. Reese had plenty of time to review the hard copy in court. Judge Marrero asked him if he had had an opportunity to review it and discuss it with his counsel. And I think the reason Mr. Reese, when asked that question on March 8th, says to Judge Marrero, Judge Marrero, yes, I've reviewed this document. I quibble with many of its terms. And does not say, Judge, I haven't really had a chance to review this document because things have been so for that suggestion, that is simply a point in his affirmation that is absolutely false. I do think that there was enough of a basis for Judge Marrero to conclude, based on everything in front of him, that that was the case. At a minimum, we'll establish that. Judge Marrero's initial analysis seemed to suggest, though, that he thought that the proof had been induced beyond a reasonable doubt to support the conviction. And therefore, he couldn't show prejudice with a 108-month sentence, which seemed not really apropos. It is not apropos, Your Honor, apropos, Your Honor. But that is because Mr. Reese raised a number of arguments, including arguments that had already been rejected on his direct appeal. And so, Judge Marrero was responding to a variety of arguments in that first opinion. It is, I think, in light of everything that Judge Marrero saw about this defendant, which included his testimony at trial that was false in some significant respects. Which included the information that Judge Marrero was aware of, that in prior proceedings, as Judge Gleason described in that transcript that we quote, Mr. Reese has submitted fraudulent documents. And that as Mr. Reese testified at trial himself, he has six prior convictions for fraudulent conduct that reflect on his credibility. A good place to stop, you've gone well over your time. Yes, Your Honor. Thank you very much. Thank you. Mr. Culp has two minutes. Thank you, Your Honor. That kind of argument that sort of blasting the person for who he is and his criminal record was excoriated by Judge Sotomayor in her footnote in the found case. I make reference to this in my reply. I can't get to everything that was said, but quickly, on the March 8th transcript, it's at least subject to dispute whether my client is saying I had the document. Now, bear in mind, he's a client, not a lawyer. But whether he was given the document or whether he viewed it with his lawyer, those are two different things. They could be talking about it or him looking at it. I don't think it should be attributed to him, a lot of the conclusions that opposing counsel is drawing, even if he did have it in his hands. But he says, I've reviewed the plea agreement. Second, very important. The government's argument is constructed in a way as if Judge Marrero had this transcript in front of him when he issued those orders. The first one, which made no sense, Judge Carney, as you pointed out, because he said, the Second Circuit has rejected all this stuff and you were proven guilty beyond a reasonable doubt. This was an entirely separate claim supported by a lengthy affidavit. But Judge Marrero, even in his other version of the decision in this case, where he just dismisses, I think in violation of FAM, the statements of self-serving. He doesn't say, well, I went back and reviewed the March 8th transcript. That was three years prior. In fact, I say to you as an officer of the court, I'm almost certain this transcript is here because I ordered it. Now, I don't know if Judge Marrero has the ability to get a transcript and have it not be reflected on the docket or something like that, but I ordered these transcripts. So I don't think, at the very least, he does not say, I looked at this March 8th transcript and the following things that were said that refute what you say in your affirmation. That never happened. The government never put anything in. The lawyer never put anything. So none of these things that in FAM and other cases said should have happened, did happen in this case. On the objective indicia, if I could just refer you to my reply brief, there are other things. You got it, okay. I know it's been a long day and a long hike earlier. Thank you very much. Thank you both for a reserved decision. I'll ask the clerk to adjourn court. Court is adjourned.